TACHA, Chief Circuit Judge.
Defendant-Appellant Sergio Gonzalez-Huerta pleaded guilty to illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a)-(b)(2). The District Court sentenced Mr. Gonzalez-Huerta to 57 months’ incarceration. In determining Mr. Gonzalez-Huerta’s sentence, the court did not rely upon judge-found facts, but it did apply mandatorily the U.S. Sentencing Guidelines (2003) (“Guidelines”). Mr. Gonzalez argues for the first time on appeal that this mandatory application of the Guidelines constitutes reversible error under United States v. Booker, — U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Because Mr. Gonzalez-Huerta did not raise this argument in the District Court, this appeal is reviewed only for plain error. See Fed.R.Crim.P. 52(b). We take jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), hold that the fourth prong of plain-error review is not satisfied, and AFFIRM.
I. BACKGROUND
In 1994, Mr. Gonzalez-Huerta was convicted of committing burglary in California. After serving a prison term, he was deported to Mexico in 2000. In May 2003, Mr. Gonzalez-Huerta was arrested in New Mexico for possession of a controlled substance. While Mr. Gonzalez-Huerta was being held in a New Mexico jail, United States Border Patrol Agents discovered that he had reentered the country illegally. The Government indicted Mr. Gonzalez-Huerta for unlawfully reentering the United States after deportation following an aggravated felony. See 8 U.S.C. § 1326(a)-(b)(2). By statute, this offense is punishable by a maximum sentence of 20 years, with no mandatory minimum sentence. 8 U.S.C. § 1326(b)(2). Mr. Gonzalez-Huerta pleaded guilty without entering into a plea agreement.
With the exception of its findings regarding Mr. GonzalezAHuerta’s prior convictions, the District Court calculated Mr. Gonzalez-Huerta’s sentencing range under the Guidelines without making findings of fact beyond those admitted by Mr. Gonzalez-Huerta. In so doing, the District Court concluded that Mr. Gonzalez-Huerta had an offense level 21 and a criminal history category IV. The court then mandatorily applied the Guidelines, which set Mr. Gonzalez-Huerta’s sentence range at 57-71 months’ imprisonment, and imposed a 57-month sentence. While Mr. Gonzalez-Huerta did not object to the mandatory application of the Guidelines at sentencing, he did timely appeal his sentence.
While this case was pending on appeal, the Supreme Court issued its opinion in Blakely v. Washington, — U.S. -, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004), which held that in a state prosecution the Sixth Amendment requires that the maximum permissible sentence in a given case must be determined solely by reference to “facts reflected in the jury verdict or admitted by the defendant.” That is to say, the Court held that mandatory sentencing guidelines, which require the sentencing judge to make findings of fact, may not be used to increase a defendant’s sentence in a state prosecution even though this enhanced sentence falls within the statutory sentencing range. In January of this year, the Court held that Blakely applies to *731 federal sentences as well. Booker, 125 S.Ct. at 749-50.
On appeal, Mr. Gonzalez-Huerta argues for the first time that Booker is grounds for remanding his case for resentencing. We set this case for en banc review sua sponte to resolve this matter of great importance. See 28 U.S.C. § 46(c). We requested supplemental briefing from the parties on an expedited basis and received an amicus curiae brief from the National Association of Criminal Defense Lawyers. The question being fully argued, we turn to the single substantial issue in this appeal: On plain-error review, does the District Court’s mandatory application of the Guidelines constitute reversible error when the District Court relied solely upon Mr. Gonzalez-Huerta’s prior convictions and admitted facts in determining his maximum sentence? [1]
II. DISCUSSION
A.
In Booker, the Court “reaffirm[ed its] holding in Apprendi: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.” Booker, 125 S.Ct. at 756. As a result, the Court held that mandatory application of the Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence. The Court constructed a unique remedy to this constitutional infirmity. It severed two provisions of the Sentencing Reform Act of 1984, codified at 18 U.S.C. § 3551 et seq. Namely, it excised 18 U.S.C. § 3553(b)(1), which made the imposition of a Guidelines sentence mandatory in the vast majority of cases, and those portions of 18 U.S.C. § 3742(e) that established standards of review on appeal. Booker, 125 S.Ct. at 764. Henceforth, courts are still required to consider the Guidelines in determining sentences, but they are not required to impose a sentence within the Guidelines range. Id.
As a result, there are two distinct types of error that a court sentencing prior to Booker could make. First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant’s sentence mandatorily. As Booker makes clear, the Sixth Amendment prohibits this practice. 125 S.Ct. at 756. As a matter of convenience, we will refer to such an error as a “constitutional Booker error.” Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting *732 sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction. Id. at 769. While this type of sentence does not violate the Sixth Amendment, id., such a sentence is nonetheless impermissible because the Court severed the portion of the Sentencing Reform Act that required the mandatory application of the Guidelines, id. at 764. We will refer to this second type of error as a “non-constitutional Booker error.”
B.
This case presents us with a non-constitutional Booker error.[2] The record establishes that, except for the fact of Mr. Gonzalez-Huerta’s prior convictions, the District Court relied solely upon facts admitted by Mr. Gonzalez-Huerta in calculating his maximum sentence. It is also undisputed that Mr. Gonzalez-Huerta did not raise this non-constitutional Booker error below. Thus, we review Mr. Gonzalez-Huerta’s claim for plain error. See Fed.R.Crim.P. 52(b); Booker, 125 S.Ct. at 769 (stating in dicta that not every appeal should be remanded for resentencing “because we expect reviewing courts to ... determin[e] ... whether the issue was raised below and whether it fails the ‘plain error’ test.”); Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (holding that defendant’s argument based upon United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which held the failure to instruct the jury on the issue of materiality is a Sixth Amendment violation, was raised for the first time on appeal and thus subject to plain-error review).
We turn, then, to our application of plain-error review. “Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Burbage, 365 F.3d 1174, 1180 (10th Cir.) (quotation omitted), cert. denied, — U.S. -, 125 S.Ct. 510, 160 L.Ed.2d 381 (2004). Clearly, the first two prongs of the plain-error test are met here. First, the Booker Court excised 18 U.S.C. § 3553(b)(1), thereby rendering the Guidelines discretionary. Booker, 125 S.Ct. at 764. The District Court’s mandatory application of the Guidelines, then, was erroneous. As to the second prong, an error is “plain” if it is clear or obvious at the time of the appeal, Johnson, 520 U.S. at 468, 117 S.Ct. 1544, and Booker renders the error here both clear and obvious on appeal. Thus, the primary issue in this case is whether Mr. Gonzalez-Huerta can satisfy both the third and fourth prongs of plain-error review.
C.
Satisfying the third prong of plain-error review- — that the error affects substantial rights — “usually means that the error must have affected the outcome of the district court proceedings.” United States v. Cotton, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (quota *733 tions omitted); see also United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The appellant bears the burden to make this showing.[3] United States v. Vonn, 535 U.S. 55, 62-63, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); Olano, 507 U.S. at 734-35, 113 S.Ct. 1770. This is also the case when the error occurs during sentencing. See Jones v. United States, 527 U.S. 373, 394-95, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). As this Court held in United States v. Brown, 316 F.3d 1151, 1158 (10th Cir.2003), a “defendant appealing her sentence who failed to timely object to the alleged error bears the burden of proving prejudice under plain . error analysis.” Indeed, even when the underlying error is constitutional — as is not the case here — appellant retains the burden to demonstrate that substantial rights are affected. Cotton, 535 U.S. at 632, 122 S.Ct. 1781; United States v. Chavez, 229 F.3d 946, 951 (10th Cir.2000). To meet this burden, the appellant must show “a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.” United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2339, 159 L.Ed.2d 157 (2004) (alterations and quotation omitted). Mr. Gonzalez-Huerta therefore bears the burden to convince this Court, based on the record on appeal, that the error affected his substantial rights. See id. at 2340; Vonn, 535 U.S. at 59, 122 S.Ct. 1043; United States v. Rodriguez, 398 F.3d 1291, 1305-06 (11th Cir.2005), petition for cert. filed, (U.S. Feb. 23, 2005) (No. 04-1148).[4]
Mr. Gonzalez-Huerta and Amicus National Association of.. Criminal Defense Lawyers counter that Mr. Gonzalez-Huerta does not bear the burden to show that his substantial rights were affected. They contend that this conclusion follows because the District Court’s mandatory application of the Guidelines constitutes structural error. We disagree.
In Olano, the Court held that to satisfy the third prong of plain error, “in most cases ... the error must have been prejudicial: It must have affected the outcome of the district court proceedings.” 507 U.S. at 734, 113 S.Ct. 1770. The Court, however, carved out an exception to this general rule. It stated that “there may be a .special category of forfeited errors [i.e., structural errors] that can be corrected regardless of their effect on the outcome.” Id. at 735, 113 S.Ct. 1770. A “structural” error, as explained in Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), is a “defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.” Structural errors deprive defendants of “basic protections” without which “a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.” Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (internal citation omitted). The Court has found structural er *734 rors only in a very limited class of cases.[5] We have also noted that “the universe of [structural] errors is extremely small.” United States v. Garcia, 78 F.3d 1457, 1464 n. 10 (10th Cir.1996). Indeed, the Supreme Court has held that “[i]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are [not structural errors.]” Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).
Given these considerations, we conclude that non-constitutional Booker error does not constitute structural error. First, as Neder implies, generally speaking structural errors must, at a minimum, be constitutional errors. See id. Second, because Mr. Gonzalez-Huerta had counsel and an impartial judge there is a strong presumption against finding structural error. Id. Third, a defining feature of structural error is that the resulting unfairness or prejudice is “necessarily unquantifiable and indeterminate,” Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), such that “any inquiry into its effect on the .outcome of the case would be purely speculative,” Satterwhite v. Texas, 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). That is to say, if, as a categorical matter, a court is capable of finding that the error caused prejudice upon reviewing the record, then that class of errors is not structural. Such is the case with non-constitutional Booker error. If, for example, the district court indicates that but for the mandatory nature of the Guidelines it would have issued a lower sentence, the reviewing court could determine from the record that the error was prejudicial.[6] See United States v. Shelton, 400 F.3d 1325, 1328, 1332-33 (11th Cir.2005) (holding that the defendant had satisfied the third prong where the district court stated that the Guidelines sentence was “very, very severe” and indicated by other statements that the mandatory Guidelines sentence was “unfortunate.”). Hence, we hold that non-constitutional Booker error is not structural error. Accord United States v. Antonakopoulos, 399 F.3d 68, 80 n. 11 (1st Cir.2005).
Alternatively, Mr. Gonzalez-Huerta argues that he does not bear the burden under the third prong of plain error because the Olano Court noted that some unraised errors should be “presumed prejudicial if the defendant cannot make a specific showing of prejudice.” 507 U.S. at 734, 113 S.Ct. 1770. He urges that when a case is pending on appeal and an intervening decision overturns law that was well-settled while the case was in the district court, the appellee should bear the burden to establish that substantial rights were not affected. See United States v. Barnett, 398 F.3d 516, 526-29 (6th Cir.2005); United States v. Viola, 35 F.3d 37, 42 (2d Cir.1994), abrogated on other grounds by Salinas v. United States, 522 U.S. 52, 65- *735 66, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); United States v. Washington, 12 F.3d 1128, 1139 (D.C.Cir.1994).[7] Following this same line of reasoning, the Sixth Circuit in Barnett held that a presumption of prejudice is appropriate for non-constitutional Booker error because “the inherent nature of the error [makes] it exceptionally difficult for the defendant to demonstrate that the outcome of the lower court would have been different had the error not occurred.” 398 F.3d at 526-27. Mr. Gonzalez-Huerta argues that this Court should adopt the approach taken in Barnett.
We do not find Barnett persuasive for several reasons. First, in the twelve years since its decision in Olano, the Court has never again mentioned this category of presumed prejudice — let alone applied it to an analogous factual scenario. In Johnson, for example, the Court faced the question whether a defendant bore the burden to satisfy the third prong of plain error when he raised, for the first time on appeal, an argument based on the intervening Supreme Court decision of United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which overturned law that was well-settled at the time of the district court proceedings. 520 U.S. at 469-70, 117 S.Ct. 1544. The Court, however, failed to make any mention of presumed prejudice in reaching its decision. We similarly question the applicability of presumed prejudice to Mr. Gonzalez-Huerta’s case.
Second, establishing that non-constitutional Booker error affects substantial rights is not an impossible task. The Eleventh Circuit’s recent Shelton opinion illustrates one means of satisfying the third prong. If the sentencing judge expressed unhappiness on the record with the mandatory nature of the Guidelines as it relates to the sentence in that particular case, then the defendant can satisfy the third prong of plain error. Shelton, 400 F.3d 1325, 1328. Moreover, “[e]ven in cases where the judge was silent, there may be cases in which the appellate panel is convinced by the defendant based on the facts of the case that the sentence would, with reasonable probability, have been different such that” the third prong may be satisfied. Antonakopoulos, 399 F.3d at 81 (outlining scenarios where the third prong of plain error would likely be met); see also United States v. MacKinnon, 401 F.3d 8, 11 (1st Cir.2005) (judge’s comments plus numerous grounds for departure that could not be considered under mandatory guidelines required remand). We are confident, then, that leaving the burden with the appellant does not render satisfaction of the third prong impossible.
Third, an appellant, even prior to Booker, had every reason to present mitigating sentencing factors to the district court. See Barnett, 398 F.3d at 537-38 (Boggs, C.J., dissenting). The Guidelines present a sentencing court with a range in which to sentence. Thus, both the prosecutor and defense counsel, even under the mandatory Guidelines scheme, had the opportunity to present mitigating circumstances to the district court that might place a criminal defendant at the high or low end of the range. As such, “[a]ny arguments that might be raised post -Booker about culpability, future dangerousness, offsetting *736 good works, family obligations, or any other mitigating circumstance were also fair game pre-Booker.” Id. at 538. As Chief Judge Boggs aptly concluded, “the Guidelines never placed any limits on the ability of the district court to consider these factors, so there is no reason to remand so the district court may consider additional circumstances.” Id. Hence, any failure to include such evidence in the record prior to Booker fairly rests with the appellant.
Finally, placing the burden on the appellant is one of the essential characteristics distinguishing plain error from harmless error. See Vonn, 535 U.S. at 62-63, 122 S.Ct. 1043; Olano, 507 U.S. at 734-35, 113 S.Ct. 1770. Shifting the burden to the appellee would seriously blur this distinction and would be inconsistent with our precedent. Cf. United States v. Labastida-Segura, 396 F.3d 1140, 1143 (10th Cir.2005) (on harmless-error review, remanding a non-constitutional Booker error case in the face of a silent record). Therefore, we do not adopt the Barnett burden-shifting approach and hold that Mr. Gonzalez-Huerta bears the burden to establish by a reasonable probability based upon the record on appeal that his substantial rights were affected by the District Court’s mandatory application of the Guidelines. Accord United States v. Mares, 402 F.3d 511, 520-22, 2005 WL 503715 at *8-*9 (5th Cir.2005); Antonakopoulos, 399 F.3d at 79-80; Rodriguez, 398 F.3d at 1299-1301.
D.
We need not determine whether Mr. Gonzalez-Huerta can satisfy this burden because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief. See Cotton, 535 U.S. at 632-33, 122 S.Ct. 1781 (“[W]e need not resolve ... [the third prong of plain-error review], because even assuming respondents’ substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.”); Johnson, 520 U.S. at 469-70, 117 S.Ct. 1544 (same); United States v. Gonzalez Edeza, 359 F.3d 1246, 1251 (10th Cir.2004) (applying Cotton and Johnson). Mr. Gonzalez-Huerta does not satisfy this prong.
As a preliminary matter, we note that in the wake of Booker several courts of appeals have collapsed the third and fourth prong analyses. That is to say, if these courts find the third prong satisfied, they conclude that the fourth prong is met as a matter of course. See, e.g., United States v. Crosby, 397 F.3d 103, 118 (2d Cir.2005) (“[A] district judge’s decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.”). We cannot subscribe to this approach. The Court in Olano clearly held that “a plain error affecting substantial rights does not, without more, satisfy the ... standard, for otherwise the discretion afforded by Rule 52(b) would be illusory.” 507 U.S. at 737, 113 S.Ct. 1770. Therefore, we are bound to treat the third and fourth prongs as independent inquiries.
Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Johnson, 520 U.S. at 467, 117 S.Ct. 1544. As such, we will not notice a non-constitutional error, such as the one in the case before us, unless it is both “particularly egregious” and our failure to notice the error would result in a “miscarriage of justice.” United States v. Gilkey, 118 F.3d 702, 704 (10th Cir.1997); see also Olano, 507 U.S. at 736, 113 S.Ct. 1770 (holding that the “discretion conferred by Rule *737 52(b) should be employed [only] in those circumstances in which a miscarriage of justice would otherwise result”) (internal quotations omitted). This is a demanding standard, see Dominguez Benitez, 124 S.Ct. at 2335, and of course, depends on the facts of the particular case.
Mr. Gonzalez-Huerta bears the burden of meeting this demanding standard. Vonn, 535 U.S. at 63, 122 S.Ct. 1043 (“[A] defendant has the further burden to persuade the court that the error ‘seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.’”). While some find that Olmo provides a foundation for the “presumed prejudice” approach to the third prong of plain-error review as adopted by the Sixth Circuit in Barnett, the Supreme Court has never shifted the burden to the appellee to establish that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. To the contrary, the Supreme Court has consistently applied the fourth prong of plain-error review rigorously-even when the error is the result of an intervening Supreme Court decision that alters well-settled law. For example, the Johnson Court considered the application of the fourth prong of plain-error review in the wake of its Gaudin decision, which overturned established law regarding the need to present materiality to the jury. 520 U.S. at 469-70, 117 S.Ct. 1544. Despite the major change in criminal law made by Gaudin, the Court declined to carve out an exception to the burden framework as to the fourth prong of plain error. Id. Rather, it concluded that the record on appeal simply provided “no basis” for the notion that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, and that a miscarriage of justice would not result from its decision to affirm. Id.
This Court has similarly applied the fourth prong of plain-error review in cases where an intervening Supreme Court decision alters well-settled law. We considered this issue immediately after the Supreme Court’s decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which, like Booker, drastically changed federal sentencing procedure. Nonetheless, we applied the traditional rigorous approach to the fourth prong of plain-error review to appeals pending when the Court issued that decision. See United States v. Keeling, 235 F.3d 533, 538-40 (10th Cir.2000). We use the same approach today.
Mr. Gonzalez-Huerta fails to meet his burden to satisfy the fourth prong of plain-error review. In his brief on appeal, he offers nothing more than the conclusory statement that: “[T]o leave standing this sentence imposed under the mandatory guideline regime, we have no doubt, is to place in jeopardy the fairness, integrity, or public reputation of judicial proceedings.” Aplt. Supp. Brief at 12 (quoting United States v. Hughes, 396 F.3d 374, 381 (4th Cir.2005)). Providing this quotation is a far cry from establishing that a miscarriage of justice would occur if we do not remand.[8] To the contrary, based upon our *738 review of the record, we are convinced that the District Court’s mandatory application of the Guidelines was not “particularly egregious” or a “miscarriage of justice.”
Several considerations support our conclusion. The error of which Mr. Gonzalez-Huerta complains is not the substantive error first recognized in Blakely and which Booker sought to eliminate — namely, that the Sixth Amendment is violated when a judge, rather than a jury, finds facts that mandatorily increase a defendant’s sentence. Rather, the error in Mr. Gonzalez-Huerta’s case — that the District Court applied the Guidelines mandatorily — is only error insofar as it runs afoul of the Court’s remedy for the unconstitutional implications of the Guidelines. This disconnect between the constitutional violation and the remedy makes Booker unique. While there is no doubt that the remedy cures the constitutional violations going forward, usually the cure for a constitutional violation directly relates to the constitutional violation. The fortuity of the Court’s choice to excise 18 U.S.C. § 3553(b)(1), instead of a remedy more directly related to the underlying constitutional problem, is key to our determination that the District Court’s erroneous — although not constitutionally erroneous — mandatory application of the Guidelines is not particularly egregious or a miscarriage of justice.
Moreover, the purpose of the Guidelines was to promote uniformity in sentencing so as to prevent vastly divergent sentences for offenders with similar criminal histories and offenses. See Koon v. United States, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The federal courts have been striving towards this worthy goal since 1987. Indeed, this goal remains the same post-Booker. Booker, 125 S.Ct. at 761 (“This point is critically important. Congress’ basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity.”). In doing so, the courts and the United States Sentencing Commission have established national norms for sentencing that are embodied in the Guidelines. See Mistretta v. United States, 488 U.S. 361, 369-70, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Even though district courts now have discretion in sentencing, they must consider the Guidelines (i.e., the national norm) when sentencing. Booker, 125 S.Ct. at 764 (“The Act nonetheless requires judges to consider the Guidelines ‘sentencing range established for ... the applicable category of offense committed by the applicable category of defendant.’ ”). Here, Mr. Gonzalez-Huerta received a sentence that is within this national norm and the record is devoid of any mitigating evidence.[9] Given that his sentence is consistent with this national norm and there is no record evidence to support *739 a lower sentence, we cannot conclude that Mr. Gonzalez-Huerta’s sentence is particularly egregious or a miscarriage of justice.
Further, for the last eighteen years, every federal court has given the Guidelines tacit, and in most cases explicit, approval, applying them to tens of thousands of federal sentences. In this regard, we agree with the First Circuit that “one cannot possibly say that all sentences imposed before Booker threatened the fairness, integrity, or public reputation of judicial proceedings, or undermined our confidence in the outcome of the sentence, simply because the Guidelines were mandatory.” Antonakopoulos, 399 F.3d at 80; cf. United States v. Wilson, 244 F.3d 1208, 1220 n. 7 (10th Cir.2001) (applying the fourth prong of the plain-error test and declining to correct an error, in part, because the procedures involved “were universally considered fair at the time of trial”).
Indeed, courts have held that sentencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended. For example, the courts generally have held the fourth prong met when the sentence exceeds the statutory maximum,[10] United States v. Maxwell, 285 F.3d 336, 342 (4th Cir.2002), when the sentencing court employs an improper burden of proof, United States v. Jordan, 256 F.3d 922, 933 (9th Cir.2001), and when the sentencing court denies the defendant his right to allocution, United States v. Adams, 252 F.3d 276, 288-89 (3rd Cir.2001).[11] Here, we are not faced with a similar scenario where basic notions of justice are jeopardized. Hence, we cannot hold, based upon the culmination of these factors, that the mandatory application of the Guidelines in this case — while error — is a particularly egregious one that would result in a miscarriage of justice or otherwise call the judiciary into disrepute unless we remanded.
III. CONCLUSION
Because Mr. Gonzalez-Huerta’s challenge to this non-constitutional Booker error was raised for the first time on appeal and he cannot satisfy the fourth prong of plain-error review, we AFFIRM.

. Mr. Gonzalez-Huerta raises a second issue solely for the purpose of preserving it for a petition for certiorari. He argues that Blakely calls into question the Court’s ruling in Al-mendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that the fact of a prior conviction may be judicially recognized. First, we note that this argument was not raised below, limiting our review to plain error. In any event, the holding in Booker, envisions Almendarez-Torres as good law. Booker, 125 S.Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.”). We believe that any reconsideration of Almendarez-Torres must be conducted by the Supreme Court. See State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents.”); cf. Shepard v. United States, - U.S. -, 125 S.Ct. 1254, 1263-64, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring) (noting that the Supreme Court has not reconsidered Almenda-rez-Torres since announcing the rule applied in Blakely and Booker).

. In a footnote, Mr. Gonzalez-Huerta briefly asserts that the mandatory use of the Guidelines violates the Due Process Clause of the Fifth Amendment, rather than the jury trial guarantee under the Sixth Amendment. In support of this argument, he cites Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), to demonstrate that the legislature can create statutory liberty interests in sentencing procedures. Mr. Gonzalez-Huerta fails to argue, however, that any provision in the Sentencing Reform Act creates such a statutory liberty interest. Because Mr. Gonzalez-Huerta fails to provide this essential predicate for a due process claim, we find this argument unpersuasive.

. Because it fails to discuss this crucial issue of who bears the burden to establish that substantial rights were affected, we find United States v. Ameline, 400 F.3d 646, 654 (9th Cir.2005), vacated and reh'g en banc granted 401 F.3d 1007 (2005), unpersuasive.

. Because plain error must be assessed based upon the record on appeal, we find the approach to Booker plain error adopted in United States v. Crosby, 397 F.3d 103 (2d Cir.2005), and United States v. Paladino, 401 F.3d 471 (7th Cir.2005), which provide for limited remands to determine whether the district court would issue a lower sentence, inconsistent with plain error doctrine. See Rodriguez, 398 F.3d at 1304-06 (critiquing the Crosby approach).

. See Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable-doubt instruction to jury); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of grand jurors of defendant’s race); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (right to a public trial); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (right to self-representation at trial); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of the right to counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (lack of an impartial trial judge).

. This is not to say this is the only way the third prong can be satisfied. See United States v. Antonakopoulos, 399 F.3d 68, 81 (1st Cir.2005); United States v. MacKinnon, 401 F.3d 8, 11 (1st Cir.2005).

. Worthy of note, although the Second and District of Columbia Circuits have an intervening decision doctrine as precedent, neither court applied that precedent to Booker plain error cases. The Second Circuit has opted for the limited remand approach. Crosby, 397 F.3d at 120. The District of Columbia Circuit, on a motion for panel rehearing, held that the defendant could not satisfy the third prong and that an "intervening change in law [is] no excuse for failure to object.” United States v. Smith, 401 F.3d 497, 498-99 (D.C.Cir.2005) (citing Johnson, 520 U.S. at 464, 117 S.Ct. 1544).

. The Fourth Circuit in Hughes, 396 F.3d at 380-81, took a different approach to the fourth prong. It previously held the fourth prong satisfied because "Booker wrought a major change in how federal sentencing is to be conducted.” Id. at 380. Because we do not find that this change in well-established law mandates a lesser fourth-prong burden, we do not find this reasoning persuasive. Moreover, we note that the Fourth Circuit panel granted rehearing and issued a new opinion in Hughes. See United States v. Hughes, 401 F.3d 540 (4th Cir.2005). The Fourth Circuit now relies upon a different fourth-prong rationale. The court now holds the fourth prong met because "Hughes was sentenced to a term of imprisonment nearly four times as long as the maximum sentence *738 authorized by the jury verdict.” Id. at *555. We do not face similar facts here.

. Indeed, the District Court specifically asked Mr. Gonzalez-Huerta, "Are all of the statements of fact in your [presentence] report correct?” Mr. Gonzalez-Huerta replied, "Yes.” The court then inquired, "[I]s there any need for an evidentiary hearing on disputed facts?” Defense counsel stated there was not. The court again asked, "Are there any written materials other than the presentence report that I should take into account?” Mr. Gonzalez-Huerta's lawyer replied, "Nothing on behalf of the defendant, Judge.” The court then stated its intention to sentence Mr. Gonzalez-Huerta to 57 to 71 months' incarceration and asked, "Are you in agreement with that?” Defense counsel replied, "Yes, your honor.” Yet again, the court asked defense counsel, "would you like to make a statement on behalf of Mr. Gonzalez at this time?” Defense counsel thanked the Judge for sentencing at the low end of the range and stated that he had informed Mr. Gonzalez-Huerta that he was eligible for good-time credits.

. At times we have referred to the imposition of a sentence beyond the statutory maximum as an “illegal sentence.” The use of this terminology, however, has led to some confusion. Thus, we recently clarified that the term "illegal sentence” is reserved for those instances where the term of incarceration exceeds the statutory maximum, while a wrongly imposed sentence that is under the statutory maximum is properly termed an "erroneous sentence.” United States v. Brown, 316 F.3d 1151, 1160 n. 4 (10th Cir.2003). Because Mr. Gonzalez-Huerta's sentence is under the statutory maximum, he did not receive an "illegal sentence” that would trigger per se, reversible, plain error. Cf. United States v. Smith, 156 F.3d 1046, 1057 (10th Cir.1998).

. Although "[w]e previously have held ... that application of the wrong Guidelines range constitutes plain error,” United States v. Occhipinti, 998 F.2d 791, 801-02 (10th Cir.1993), we later clarified that application of the wrong guideline only "constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b), thereby satisfying the third prong of the plain error inquiry,” leaving the appellant with the burden to establish the remaining prongs of plain error review, United States v. Whitney, 229 F.3d 1296, 1308-09 (10th Cir.2000). Thus, even if we held that the District Court applied the wrong guideline range in this case, such a finding would not necessarily satisfy the fourth prong of plain-error review.