**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 04-6298 |
| v. | W.D. of Okla. |
| FELIX DARRELL STAFFORD, | (D.C. No. CR-03-254) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT** *

Before **EBEL**, **HOLLOWAY** , and **TYMKOVICH** , Circuit Judges.

Felix Darrell Stafford was indicted for manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and using unlawful drugs while in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). He entered a guilty plea to the firearm charge and the government agreed to dismiss the manufacturing charge. He was sentenced to 120 months. On appeal Stafford argues his sentence is

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

unconstitutional under the tenets of *United States v. Booker*, 125 S. Ct. 738 (2005).

Finding any sentencing error to be harmless, we AFFIRM.

## I.  Background

Under the United States Sentencing Guidelines, Stafford's potential sentence for the firearm charge was enhanced because he possessed unlawful drugs in connection with the offense of conviction.  *See* USSG § 2K2.1(b)(5). Prior to sentencing, the government alleged in its presentence report (PSR) that the court should attribute at least 15 ounces of methamphetamine to Stafford. This calculation was based upon an estimate of Stafford's methamphetamine production derived from the government's background investigation.  Given his criminal history and other adjustments, the PSR recommended that Stafford be sentenced at an offense level of 38, with a corresponding sentence at the statutory maximum of 120 months pursuant to 18 U.S.C. § 924(a)(2).

Stafford objected to the PSR's drug quantity calculation, arguing that the Oklahoma State Bureau of Investigation lab report did not support a finding that he was responsible for at least 15 ounces of methamphetamine.  He argued the

amount of methamphetamine properly attributed to him yielded an offense level of 26, with a corresponding sentencing range of 63 to 78 months.[1]

To resolve Stafford's objection to the drug quantities, the district court held an evidentiary hearing. One of Stafford's suppliers testified. According to her testimony, she provided Stafford "three to five cases" of pseudoephedrine pills, a methamphetamine ingredient, on a regular basis for approximately six months. She testified that "three cases a week times four weeks a month times six months" would yield an accurate number of the cases supplied. Sent. Tr. 8-9. She knew from her experience that Stafford produced about one ounce of methamphetamine from each case of pseudoephedrine she supplied. Setting aside the drugs actually found at Stafford's home, her testimony confirmed that Stafford was responsible for as much as 72 ounces of methamphetamine, far in excess of the 15 ounces attributed to him in the PSR. Although his counsel cross-examined the supplier, Stafford offered no additional rebuttal evidence contesting drug quantities.

The district court accordingly accepted the PSR's recommendation that Stafford possessed at least 15 ounces. The court sentenced Stafford to the statutory maximum of 120 months.

---

[1] Stafford's brief does not specify the precise quantity of methamphetamine that should have been attributed to him, although his counsel stated at sentencing that Stafford possessed an amount of methamphetamine equivalent to 200.6 kilograms of marijuana. Sent. Tr. 19.

## II. Discussion

The Supreme Court has held district courts may commit two distinct types of error at sentencing under the Sentencing Guidelines. As we explained in *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005), a sentencing court commits "constitutional" *Booker* error "by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." A sentencing court may also commit "non-constitutional" *Booker* error "by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion[.]" *Id*. at 731. Stafford claims the district court committed both types of *Booker* error by (1) finding he was responsible for 15 ounces of methamphetamine, and (2) sentencing him mandatorily pursuant to the Guidelines .[2]

Even if the sentencing court committed error, we review for harmlessness. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). The government bears the burden of proof, and "[i]f the error is of constitutional magnitude, as it is here, the

_____

[2] Although Stafford was sentenced before the Supreme Court announced its decision in *Booker*, he properly preserved his non-constitutional and constitutional objections at sentencing. *See United States v. Labastida-Segura*, 396 F.3d 1140, 1142-43 (10th Cir. 2005) (discussing objections in direct appeals).

government is required to prove the error was harmless beyond a reasonable doubt." *United States v. Lang*, 405 F.3d 1060, 1065 (10th Cir. 2005).

A defendant's substantial rights under Rule 52 may be affected in two ways. The first way is if "a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence." *United States v. Small*, 423 F.3d 1164, 1190 (10th Cir. 2005) (citing *United States v. Dazey*, 403 F.3d 1147, 1175 (10th Cir. 2005)). A defendant's substantial rights may also be affected if there is "a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range." *Id*.

We have considered various factors under this standard, including (1) whether overwhelming evidence supports the court's factual findings, or (2) whether the record suggests the district court would have imposed a less severe sentence had it known it had discretion. *United States v. Riccardi*, 405 F.3d 852, 875-76 (10th Cir. 2005). Neither of these two factors are present in this case.

**A.**

Stafford first argues that a jury might have found that he was responsible for a lesser drug quantity. We disagree. The district court had two sources of information regarding quantities. One source was the PSR. Stafford exercised

his right to object to the PSR's calculation, claiming it over-represented the amount of drugs for which he was responsible. At the sentencing hearing, however, Stafford did nothing to cast doubt on the PSR calculation. He simply argued that the court should rely solely on the amounts found at his residence or disclosed in a report prepared by the Oklahoma State Bureau of Investigation. He offered no reason to reject the PSR's conclusion that he possessed at least an additional 15 ounces of methamphetamine.

Responding to Stafford's objection to the drug quantity calculation, the government called one of his pseudoephedrine suppliers to testify at the sentencing hearing. While he subsequently made a legal objection to the judge relying on her testimony, he did not seriously challenge the substance of her testimony. Her uncontroverted testimony established that Stafford had access to precursor chemicals (pseudoephedrine) that could produce at least 72 ounces of methamphetamine over a six month period ((3 cases x 4 weeks) x 6 months = 72 cases x 1 ounce/case = 72 ounces).

Stafford offered no rebuttal to this testimony, nor did he offer any reason to suspect the testimony was biased or unbelievable. In fact, the district court concluded that the witness's testimony was "very credible" and determined that the government's estimate of only 15 ounces to be extremely conservative based on the record before it. Stafford's decision not to "contest these facts is [a]

strong indication that the district court based the sentencing enhancements on . . . actual conduct." *Riccardi,* 405 F.3d at 876. Accordingly, any error arising from the court's determination of drug quantities was harmless beyond a reasonable doubt.

## B.

Stafford also argues he meets the second harmless error factor discussed in *Small* and *Dazey*: would the district court likely impose a different sentence if it knew it had more discretion under the Guidelines? The answer is no. Stafford initially faced a Guidelines range of 151 to 188 months. The court reduced his sentence from the Guidelines range, however, because he faced a statutory maximum of 120 months under § 924(a)(2). Anticipating an appeal because of the uncertain sentencing landscape that existed at the time, the district court issued an alternative sentence: "my alternate sentence, assuming for the moment the guidelines are ruled unconstitutional, would be the same as that imposed under the guidelines for 120 months." Sent. Tr. 25.

We have concluded in analyzing alternative sentences issued in light of *Booker* that a remand for resentencing is ordinarily unnecessary. "[W]e do not need to read any tea leaves to determine what the district court would do on remand." *United States v. Serrano-Dominguez*, 406 F.3d 1221, 1223 (10th Cir. 2005) (finding harmless error where court imposed alternative sentence); *see also*

*United States v. McCleary*, No. 04-6316, 2005 WL 2746748 (10th Cir. Oct. 25, 2005) (concluding sentencing error harmless where district court imposed alternative sentence). The same is true here. The district court's exercise of its discretion to impose an alternative sentence clears up any doubt that even under an advisory Guidelines scheme, it would have imposed the same sentence.[3]

\* \* \*

In sum, nothing suggests the district court's fact finding was reasonably contestable, or that the court "would exercise [its] now-greater discretion to reduce [the defendant's] sentence" on remand. *Riccardi*, 405 F.3d at 876. Nor do the court's remarks at sentencing suggest anything other than the court's belief that Stafford's sentence was appropriate. We are satisfied that although the sentence may have been imposed in violation of Sixth Amendment standards set forth in *Booker*, the error did not violate Stafford's substantial rights and was harmless.

## III. Conclusion

We AFFIRM Stafford's sentence.

Entered for the Court

---

[3] The government also argues that by pleading guilty and signing the waiver of jury trial form, Stafford is precluded from raising a constitutional *Booker* argument now. We need not reach this issue because any error committed by the district court satisfies our harmless error test.

Timothy M. Tymkovich
Circuit Judge