LUCERO, Circuit Judge,
concurring in part and dissenting in part.
Were this case simply about an innocent game of canasta, I would readily join the opinion of my majority colleagues outright. However, the abrupt departure of the trial judge from the bench while defense counsel was discussing the testimony of defendant’s star witness, when coupled with the court’s earlier admonitions to the jury that the same witness’s testimony was “absolutely untrue” and a “falsity,” can only be interpreted as a clear message to the jury that the witness was not credible or worthy of the court and jury’s unbiased consideration. Although I agree with the majority’s disposition of Solon’s speedy trial and complete defense claims, I would hold that the judge’s actions were a clear violation of Solon’s due process rights and constituted reversible plain error. Thus, I respectfully dissent.
I
To understand the district court’s actions in this case, some context is necessary. As the majority notes, the district court approved payment of up to $20,000 for Tami Loehrs’ expert services. (Majority Op. 1208.) Following submission of Loehrs’ initial bill, the court stated “that woman is outrageous in her charges for what she did to travel from Arizona up to Casper.” Although the trial judge acknowledged he had authorized payment of up to $20,000, the judge continued that “it is going to be a cold day in hell before I ever authorize” payment to Loehrs of $15,000. In a later hearing, the court again commented on Loehrs, claiming to “have never heard a more abrasive witness than that.” It then advised defense counsel that he did not need to use “this woman with pretty exalted ideas of her worth.”
The court’s derision of Loehrs continued into trial. When asked if she had re *1215 viewed certain virus logs, Loehrs responded, “Actually, this is about the point in my exam where I was stopped.” The government objected and requested that the comment be stricken, but the district court went well beyond the government’s request. Sua sponte, the court instructed the jury:
Members of the jury, the witness just said that she was stopped and coupled with her testimony yesterday there is the implication that the court stopped her from working. That is absolutely untrue. It is a falsity, and you are instructed to ignore it. And we will hear no more such testimony. I never did stop this witness from working. I did stop her from submitting excessive bills to the United States, and that’s all I ever did.
Against this backdrop, the court’s actions during closing take on added significance. Defense counsel began to discuss what he viewed as a “double standard in this courtroom with regard to what people say and then holding them to it,” implying that the prosecutor unfairly took Loehrs to task for inconsistencies in her testimony although the testimony of several government witnesses contained similar inconsistencies. Counsel then identified “a couple of mistakes” Loehrs had made in her testimony, which he deemed “inconsequential.” At that point, the judge left the courtroom, telling counsel to “just go right ahead.” Defense counsel declined the court’s invitation, explaining to the jury that if he “were to say something that caused [the prosecutor] to have some grief, and [the prosecutor] stood up and made an objection, there would be no one to rule.” The prosecutor took control of the courtroom, suggesting the jury use the break “to get up and stretch, relax.” A little more than five minutes later, the judge returned. He stated:
Sorry for the interruption, but I did not intend for there to be one. But my secretary had announced just as I was leaving to start court that this was her afternoon to play canasta, and I had to get a couple letters out.
The judge’s contempt for Loehrs is patent from the cold transcript. After instructing the jury that Loehrs was lying on the stand and had attempted to raid the federal treasury by submitting “excessive bills,” the court simply could not bear to listen to defense counsel’s discussion of her reliability. The judge’s comments upon return only compounded the error, in that they were likely taken and understood by the jury as implying that a secretary’s canasta game was more important than Solon’s defense theory. Although I am not unsympathetic to the trial judge’s frustration regarding the high cost of litigation and experts fees, the matter of Loehrs’ fees should not have been handled in such an unorthodox manner.
II
Because Solon’s counsel, likely flummoxed by the incredible events he witnessed, failed to object to the judge’s absence, I agree with the majority that we review only for plain error. Further, I agree that Solon has failed to demonstrate that the judge’s actions constituted structural error. See United States v. Gonzalez-Huerta, 403 F.3d 727, 734 (10th Cir. 2005) (en bane). The judge’s actions did not “affect the composition of the record,” Rose v. Clark, 478 U.S. 570, 580 n. 7, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), and we are “capable of finding that the error caused prejudice upon reviewing the record,” Gonzalez-Huerta, 403 F.3d at 734. This case is unlike those upon which Solon relies for his structural error arguments, United States v. Mortimer, 161 F.3d 240 (3d Cir.1998), and Riley v. Deeds, 56 F.3d 1117 (9th Cir.1995). The harm here was not the judge’s absence at a critical stage *1216 in trial, but his unspoken commentary to the jury.
Although the majority holds that the district court’s actions constituted clear and obvious error, it concludes that Solon failed to demonstrate prejudice. (Majority Op. 1212-13.) I must disagree. There is no denying that the government’s case was strong. As the majority accurately recounts, child pornography was found on Solon’s computer, and Solon admits to being online the night that pornography was downloaded. (Majority Op. 1213.)
Nonetheless, Solon mounted a defense that a jury could have credited. He argued that the child pornography was placed on his computer as a result of a computer virus or Trojan. Loehrs testified:
[Solon’s] computer had all of the symptoms, all of the things that you could need to have a vulnerable computer. He had Limewire. He had his IP address out there. He had no password. He had open ports. He had evidence of viruses and Trojans that further made his computer vulnerable.
I have not done all of the investigation to prove that this computer was hacked into, but it looks really bad. It is very, very open, and very, very unsecure [sic]. This defense theory has been successfully employed in other cases, and has been the subject of some media attention. See Laurel J. Sweet, Probe Shows Kiddie Pom Rap Was Bogus, Boston Herald, June 16, 2008, at 5; John Schwartz, Acquitted Man Says Virus Put Pornography on Computer, N.Y. Times, Aug. 11, 2003, at Cl.
The majority holds that Solon has not established “a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.” (Majority Op. 1212-13 (quoting Gonzalez-Huerta, 403 F.3d at 733).) Although it is treacherous for appellate judges to attempt to predict the votes of jurors, I would hold that Solon has met his burden under the third prong of our plain error analysis. That is, he has shown that the error “affect[ed] substantial rights.” United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Fed.R.Crim.P. 52(b)). The inquiry is whether Solon has shown that, but for the court’s error, there was a reasonable probability of acquittal. See United States v. Hasan, 526 F.3d 653, 665 (10th Cir.2008). “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. (quotation omitted). Solon does not bear the burden of proving he is actually innocent; instead, “the touchstone is simply whether the ultimate verdict is one worthy of confidence.” United States v. Robinson, 583 F.3d 1265, 1270-71 (10th Cir.2009) (quotation omitted).
I have no confidence in the jury verdict under review. Had at least one juror credited Loehrs’ testimony, Solon’s jury may well have found reasonable doubt. But the jury was unfairly prejudiced against Loehrs by the comments and actions of the district court. In our adversarial system, a criminal defendant is entitled to stage a credibility contest refereed by a jury' of his peers. Solon was not given this opportunity. Instead, the district court instructed the jury that Solon’s primary witness was dishonest and that Solon’s theory was unworthy of the court’s time. It may as well have directed a verdict of guilty.
Because the majority decides this case on the third prong of plain error review, it does not address whether the court’s actions “seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.” Gonzalez-Huerta, 403 F.3d at 732 (quotation omitted). I would hold that Solon has satisfied this prong as well. The district court went beyond what might *1217 simply be described as negative feelings toward a defense witness, actively impeaching Loehrs by word and deed in derogation of its duty of neutrality. When judges behave in such a manner, our entire judicial system suffers. Neutrality in judges:
preserves both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.
Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (quotation omitted).
Ill
For the foregoing reasons, I respectfully dissent.