**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT JAMES EASTERWOOD,

Defendant-Appellant.

No. 10-8036
(D.C. No. 1:09-CR-00231-ABJ-1)
(D. of Wyo.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

Robert James Easterwood appeals his conviction for possession, receipt, and distribution of child pornography. He asserts two trial errors as grounds for relief. First, he argues the district court's admission of a photograph into evidence was unduly prejudicial under Federal Rule of Evidence (FRE) 403. Second, he contends the court admitted as evidence his financial affidavits for court appointed counsel, thereby compromising his Fifth and Sixth Amendment rights.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After carefully reviewing the record on appeal, we conclude Easterwood is not entitled to relief on either claim. The district court's admission of the photograph was not abuse of discretion and the admission of the financial affidavits does not rise to the level of plain error.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM Easterwood's conviction.

## I. Background

Easterwood was arrested when the Wyoming Internet Crimes Against Children Task Force (ICAC) conducted a search of his house and discovered a computer containing child pornography. ICAC agents also found two pieces of paper under the computer keyboard with a handwritten list of words consistent with the names of the pornography files on the computer. The only other occupants of the house were Easterwood's wife and fourteen year old son.

While the ICAC agents were searching the house, Easterwood volunteered that he knew why they had come. He stated:

> [T]he computer was going in the garbage . . . . I was not even searching to begin with. Things just started popping up. I got curious. Looked a little further. And I felt really this is kind of a Godsend to tell you the truth. 'Cause I told God I don't want to be thinking things I know ain't right. And I'm done with it. No matter what happens from this moment on, I'm done with it. I can tell you that.

R., Vol. 3, at 457–60, 506.

Easterwood was subsequently indicted for possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1), and interstate distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). He entered a plea of not guilty. Easterwood later testified he had not downloaded the child pornography and he did not know who had done so.

Prior to trial, the district court ordered Easterwood to provide a handwriting exemplar to determine whether he authored the handwritten list of pornographic file names discovered near the computer. A government expert concluded Easterwood had attempted to disguise his handwriting in the exemplar.

A second government expert compared the handwritten list to Easterwood's handwriting in three different financial affidavits he had prepared to establish eligibility for court appointed counsel.[1] Based on the similarity in handwriting, the expert concluded Easterwood was the author of the list. Easterwood's counsel filed a motion in limine to exclude the financial affidavits under FRE 403, arguing the knowledge that Easterwood relied on a public defender and was indigent would be prejudicial. But the motion did not cite constitutional grounds for exclusion. The district court denied the motion, and at trial the government

---

[1] Easterwood submitted one of the affidavits to secure representation in the current case. The other two affidavits were from prior criminal cases.

introduced the financial affidavits to support the testimony of the handwriting expert.

The government also sought to introduce a photograph of the bedroom of Easterwood's son. The photograph shows an unmade bed with a pile of linen and blankets. In the foreground, there appears to be more bedding thrown over a chair. In the corner of the picture is an Xbox game console and controller.

Easterwood's counsel objected to the admission of the photograph under FRE 403, fearing it would create a negative inference about the character of the defendant: "my biggest fear is that the jury is going to say these people are slobs, they live in squalor." R., Vol. 3, at 145. The government disagreed with this contention, claiming the photograph was relevant to the question of who downloaded the pornography to the seized computer. The government argued the photograph corroborated the son's statement to investigators that he did not use the computer because he had access to online games through his Xbox. Accepting this argument, the district court admitted the photograph.

In closing argument, the government's counsel displayed the photograph of Easterwood's son's room and stated, "Is that the bedroom of a child that's being protected? Is that the image of a well cared for child that's being protected?" R., Vol. 3, at 524. The government also drew the jury's attention to the fact that the handwritten list and the financial affidavits both had spelling mistakes

(specifically, "modles"/models and "turuk"/truck), to support the expert's conclusion that the same person authored both.

## II. Discussion

Easterwood challenges the admission of the photograph and the financial affidavits. We address each argument in turn.

### A. Admission of the Photograph

Easterwood first contends the district court erred in admitting the photograph under FRE 403. This rule allows for the exclusion of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403.

We review evidentiary rulings for abuse of discretion. *United States v. Soundingsides*, 820 F.2d 1232, 1242–43 (10th Cir. 1987). A district court abuses its discretion only if its decision to admit evidence is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Atencio*, 435 F.3d 1222, 1235 (10th Cir. 2006). "The trial judge's exercise of discretion in balancing the prejudicial effect and probative value of photographic evidence of this type is rarely disturbed." *Soundingsides*, 820 F.2d at 1242–43 (quotation omitted).

The district court did not abuse its discretion by admitting into evidence a single photograph of the bedroom. The court correctly concluded the photograph was probative of whether Easterwood's son used his own equipment to access games on the internet, rather than the seized computer. Nor was the photograph

of an unmade bed unfairly prejudicial. We have found far more graphic imagery "not unduly nor designedly inflammatory." *See, e.g.*, *United States v. Sides*, 944 F.2d 1554, 1563 (10th Cir. 1991) (finding "no prejudicial aspect" in photos of the dead victim because they did not show the victim's face, the bullet wound, or excessive blood). While we might have reached a different conclusion if the district court had been given other avenues to illustrate the point, we cannot say the court abused its discretion in making a considered decision after argument of counsel.

More troubling is the government's comment about the picture. Although the photograph was admitted solely for the purpose of demonstrating that Easterwood's son had the Xbox in his room, the government used some of its last words at trial to remind the jury about the photograph. "Is that the bedroom of a child that's being protected? Is that the image of a well cared for child that's being protected?" R., Vol. 3, at 524. This comment exceeded the ground rules established by the district court for the admissibility of the photograph, and came at a time in sur-closing when Easterwood had no opportunity for rebuttal.

But his counsel did not object at the time, so we review any prejudice arising from the comment for plain error. *United States v. Trujillo-Terrazas*, 405 F.3d 814, 817 (10th Cir. 2005). To establish plain error, Easterwood must demonstrate the district court (1) committed error, (2) the error was plain, and (3) the plain error affected his substantial rights. *United States v. Cotton,* 535 U.S.

625, 631 (2002). If these factors are met, we may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 631–32. This claim fails on the third prong of plain error review. To meet this standard, the defendant must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Gonzalez-Huerta,* 403 F.3d 727, 733 (10th Cir. 2005) (quotation omitted). Given the strength of the government's case against Easterwood, we cannot conclude the photograph and comment substantially prejudiced his defense.

In sum, the district court did not abuse its discretion in admitting the photograph, nor did it commit plain error in allowing the government's comment to go unchallenged.

**B. Admission of the Affidavits**

Next, Easterwood contends the admission of his financial affidavits to establish he was the author of the handwritten list of pornography files violated his Fifth and Sixth Amendment rights. He did not make these constitutional objections at trial, instead arguing the jury would view him and his counsel in a bad light if they knew counsel was court appointed. Because Easterwood's counsel failed to raise a constitutional challenge at trial, we again review for plain error. *Trujillo-Terrazas*, 405 F.3d at 817.

Easterwood argues generally that the use of such financial affidavits at trial to prove guilt offends the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. If a criminal defendant cannot afford private counsel, the trial court must appoint counsel to represent him. The defendant has the burden of establishing financial eligibility for appointed counsel. *United States v. Peister*, 631 F.2d 658, 662 (10th Cir. 1980). To establish eligibility, the defendant ordinarily provides an affidavit to the court attesting to personal indigency. Easterwood contends this financial affidavit cannot be used against him at trial, because requiring him to risk self incrimination in order to assert the right to counsel would unconstitutionally burden his Sixth Amendment rights.

The only support Easterwood musters for this claim is a case where we held the government violated the *Fifth* Amendment by introducing a defendant's statements in a financial affidavit at trial. *United States v. Hardwell*, 80 F.3d 1471, 1484 (10th Cir. 1996). In that case, the government used the affidavit to show the defendant had no legitimate source of income, to support the inference that the $10,000 in cash found on his person was the fruit of a drug transaction. We reasoned to find otherwise would force the defendant "to choose between the Sixth Amendment right to counsel and the Fifth Amendment right against self incrimination." *Id.* This holding echoes the conclusions of other circuits

regarding the admissibility of financial affidavits. *See, e.g.*, *United States v. Aguirre*, 605 F.3d 351, 358 (6th Cir. 2010); *United States v. Anderson*, 567 F.2d 839, 840–41 (8th Cir. 1977).

But the government contends the use of the financial affidavits created no tension between Easterwood's Fifth and Sixth Amendment rights. Specifically, the government distinguishes *Hardwell* by asserting the evidence in Easterwood's affidavits was not protected by the Fifth Amendment. In other words, since the district court could have ordered Easterwood to produce the same evidence in another form, he suffered no disadvantage in pursuing his Sixth Amendment right to counsel by submitting the financial affidavits.

The Fifth Amendment privilege against self incrimination applies only to testimonial evidence and does not protect a defendant from being compelled to produce "real or physical evidence." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quotations omitted) (noting a defendant may be compelled to appear in a lineup, speak aloud for purposes of identification, and give blood for analysis).

Where financial affidavits such as these are used for their substantive content, the evidence is unquestionably testimonial. *See Hardwell*, 80 F.3d at 1484 (finding a Fifth Amendment violation where the government introduced the defendant's financial affidavit to prove he had no licit income, in support of the money laundering charge); *Anderson*, 567 F.2d at 840–41 (holding the financial data disclosed in the defendant's affidavit should be sealed and not used in a

-9-

related tax prosecution); *Aguirre*, 605 F.3d at 358 (finding the government compromised the defendant's Fifth Amendment rights when it used a similar financial affidavit to show he was unemployed, creating the inference that the money found in his apartment came from illegal sources).

But in this case, the government offered the financial affidavits as evidence of Easterwood's handwriting and spelling. As Easterwood concedes, it is long settled that handwriting in and of itself is not testimonial. *Gilbert v. California*, 388 U.S. 263, 266–67 (1967) ("A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [of the Fifth Amendment] protection."). Though Easterwood does not raise this point, it is much less settled whether spelling (or misspellings) can be considered testimonial evidence. We have never addressed the question, and other circuits have reached conflicting views. *Compare United States v. Pheaster*, 544 F.2d 353, 372 (9th Cir. 1976) (finding a defendant may be compelled to provide a writing sample by dictation, which would disclose information about his spelling, because spelling "may tend to identify a defendant as the author of a writing without involving the content or message of what is written."); *with United States v. Campbell*, 732 F.2d 1017, 1021 (1st Cir. 1984) ("When he writes a dictated word, the writer is saying, 'This is how I spell it,'—a testimonial message in addition to a physical display.").

We need not resolve this thorny question today. Because Easterwood did not raise either of his constitutional objections before the district court, he must show the alleged error was plain. That is, the error must be "clear or obvious under current law," either because the Supreme Court or the Tenth Circuit has ruled on the subject, or because the district court's interpretation of the law was "clearly erroneous." *United States v. Poe*, 556 F.3d 1113, 1129 (10th Cir. 2009). First, neither the Supreme Court nor the Tenth Circuit has addressed the question of whether evidence of spelling is protected by the Fifth Amendment. And because the circuits have divided on the issue, we cannot find the district court's actions are clearly erroneous. *United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006) ("[W]e cannot find plain error if the authority in other circuits is split."); *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("Certainly, an error cannot be deemed 'plain,' in the absence of binding precedent, where there is a genuine dispute among the other circuits."). Moreover, no court has squarely held that the admission of financial affidavits is a per se violation of the Sixth Amendment right to counsel. Thus, we conclude the district court did not commit plain error.

Easterwood's claim also fails on the third prong of plain error review, because he cannot show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Gonzalez-Huerta,* 403 F.3d at 733. Easterwood's statement to the ICAC agent at the time of his arrest is

-11-

substantial evidence that he, and not another member of his household, downloaded the illegal files. The evidence also showed that Easterwood's computer contained hundreds of images that could be shared across the internet through a software program commonly used to transmit child pornography, negating any inference of accident or mistake. Given this and other evidence, we cannot see how the outcome of the trial would have been different even if the financial affidavits had been excluded.

Having said this, the government had other avenues available to obtain a sample of the defendant's handwriting and spelling. There was no reason for the government to inject into this trial documents of indigency for appointed counsel, the use of which risked compromising the defendant's Sixth Amendment right to access to counsel. The government had the means to obtain other handwriting exemplars, or it could have sought a warrant to search for additional handwriting samples at Easterwood's home or business. It should have done so.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge