**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ALFRED MELGAR, also known as
Adelaida Melgar Blanco,

    Defendant-Appellant.

No. 05-5001
(Northern District of Oklahoma)
(D.C. No. 04-CR-24-EA)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **LUCERO** and **MURPHY**, Circuit Judges.

Following a jury trial, Alfred Melgar was convicted of a single count of

possession of at least five kilograms of cocaine with intent to distribute. The

district court sentenced Melgar to a 151-month term of imprisonment and a five-

year term of supervised release. On appeal, Melgar asserts the district court

committed plain error at sentencing when it treated the United States Sentencing

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Guidelines as mandatory instead of advisory. *See United States v. Booker*, 125 S. Ct. 738 (2005). Because Melgar has failed to demonstrate that his substantial rights were affected by the district court's non-constitutional *Booker* error, this court **affirms** the sentence imposed by the district court.

During a traffic stop of Melgar's vehicle, law enforcement officers found a large quantity of cocaine. Melgar was indicted on a single count of possessing with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). Specifically, the indictment alleged Melgar possessed "approximately 31 kilograms of cocaine." At trial, Melgar contested, *inter alia*, the actual quantity of cocaine found in his vehicle.

At the close of evidence, the district court submitted to the jury in a special verdict form not only the crime set out in the indictment, i.e., possession of at least five kilograms of cocaine with intent to distribute, but also the lesser included offense of possession of at least 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) and 841(b)(1)(B)(ii). Pursuant to the special verdict form, the jury was to first consider whether Melgar was guilty of possessing with intent to distribute at least five kilograms of cocaine. If it concluded that he was, the jury was to move on and determine whether Melgar possessed either (1) "at least five kilograms but less than 15 kilograms"; or (2) "at least 15 kilograms but less than 50 kilograms." If, on the other hand, the jury did

not convict Melgar of the greater offense, it was to move on to consider whether

he was guilty of the lesser included offense of possession of at least 500 grams of

cocaine with intent to distribute.[1]  The jury found Melgar guilty of possession of

at least five kilograms with intent to distribute and, furthermore, concluded the

offense had involved at least fifteen but less than fifty kilograms of cocaine.

The presentence report ("PSR") prepared in advance of the sentencing

hearing noted that Melgar had been arrested with approximately thirty-one

---

[1]The quantity determinations submitted to the jury in the special verdict form track both the enhanced statutory penalties set out in § 841 and the provisions of the Guidelines setting base offense levels by reference to the quantities of drugs involved in the conviction.  *See* 21 U.S.C. 841(b)(1)(A)(ii) (providing, *inter alia*, for a ten-year minimum mandatory sentence for violations of § 841(a) involving at least five kilograms of a mixture or substance containing a detectible amount of cocaine); *id.* § 841(b)(1)(B)(ii) (providing, *inter alia*, for a five-year minimum mandatory sentence for violations of § 841(a) involving at least 500 grams of a mixture or substance containing a detectible amount of cocaine); U.S.S.G. § 2D1.1(c)(3) (setting the base offense level at 34 for drug crimes involving at least fifteen kilograms but less than fifty kilograms of cocaine); *id.* § 2D1.1(c)(4) (setting the base offense level at 32 for drug crimes involving at least five kilograms but less than fifteen kilograms of cocaine).  To subject a defendant to the enhanced statutory penalties set out in § 841(b)(1)(A) and (B), the qualifying drug quantity must be set out in the indictment, submitted to the jury, and proven beyond a reasonable doubt.  *United States v. Jones*, 235 F.3d 1231, 1236-37 (10th Cir. 2000).  It appears the district court submitted drug quantity determinations to the jury that are relevant solely to arriving at a sentence under the Guidelines out of a prescient concern for the validity of the district court's role in fact-finding at sentencing under the Guidelines after the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).  The district court's concern for the validity of the then-extant Guidelines scheme, which empowered district courts to make factual determinations under a mandatory Guidelines scheme, turned out to be correct.  *See generally United States v. Booker*, 125 S. Ct. 738 (2005).

kilograms of cocaine in his possession. The PSR further noted that this drug-quantity finding was consistent with the jury's determination that the crime of conviction had involved at least fifteen but less than fifty kilograms of cocaine. As to Melgar's physical condition, the PSR noted as follows:

> Melgar described his overall health as good. He is not taking any prescription medication and denied any current health problems. Melgar is currently in the process of undergoing a sex change and is comfortable discussing the matter with correctional personnel. With respect to his physical body, he was born a female but he views himself as a male. He previously had mastectomies in preparation for the final surgical procedures necessary to alter his genitals. He stated that he believes he will need to take male hormones after the surgeries. He hopes the process can be completed at some point in the future. While detained on these charges, he was assigned to a female unit of the jail because he still retains female genitals. He was confined to a cell most of the time because of harassment from other female inmates. At one point, he was confined to [the] medical unit . . . as a solution to the unique assessment problem he presents.

At the sentencing hearing, the district court began by noting the Guideline range for possession of at least fifteen kilograms but less than fifty kilograms of cocaine, when coupled with Melgar's criminal history category of I, was 151 to 188 months. The district court inquired as to whether both Melgar and the government had reviewed the PSR; both indicated they had. Both also indicated there were no objections to the PSR and no legal or factual issues were in dispute. Accordingly, the district court accepted the PSR as its findings of fact. Noting that neither party had requested a departure, the district court asked the parties to

address the court as to the proper sentence within the Guideline range. Melgar's counsel argued as follows:

> Your Honor, given Mr. Melgar's unique situation and the facts of this case, which are not particularly aggravating, I would ask that the Court consider a sentence towards the low end of the range. The low end of the range does constitute a significant portion of Mr. Melgar's life and would, in my opinion, be adequate punishment for the acts that were committed. For those reasons, I would ask that you consider something towards the low end of the range.

The government, on the other hand, asked the district court to impose a sentence at the high end of the range. According to the government, the following three considerations justified a sentence at the high end of the range: (1) the very large quantity of drugs involved in the offense; (2) evidence that Melgar had been involved in drug trafficking for some time; and (3) Melgar's continued involvement in drug trafficking after a prior brush with the law indicated a significant sentence was necessary to convince Melgar to reform his ways. The district court imposed a 151-month sentence and simply indicated as follows: "A sentence of 151 months is appropriate because there are no aggravating factors that warrant a sentence at the middle or high end of the range."

On appeal, Melgar asserts that the district court erred when it applied the Guidelines in a mandatory fashion in calculating his sentence. *Booker*, 125 S. Ct. at 769. Accordingly, Melgar requests that this court reverse and remand to the district court for a new sentencing proceeding at which the district court can

exercise its discretion to impose a sentence below the range set out in the Guidelines.

In *Booker*, the Supreme Court held that the Sixth Amendment requires as follows: "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. *Booker* makes clear that a court imposing a sentence by application of the mandatory Sentencing Guidelines could commit two types of error: constitutional error and non-constitutional error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc). Constitutional *Booker* error results from a district court "relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." *Id.* at 731. Non-constitutional error results from a district court's mandatory application of the Guidelines in contravention of the remedial portion of the Supreme Court's decision in *Booker* which renders the Sentencing Guidelines advisory only. *Booker*, 125 S. Ct. at 764-65.

Because Melgar raises his argument for the first time on appeal, we review his sentence for plain error. *See United States v. Sierra-Castillo*, 405 F.3d 932, 941 (10th Cir. 2005) (detailing four-part plain error test). Given that the jury found the requisite quantity of drugs necessary to establish a base offense level of

-6-

34, Melgar does not argue that the district court committed constitutional *Booker* error in calculating his sentence. Instead, he argues the district court committed non-constitutional *Booker* error when it applied the Guidelines in a mandatory fashion. As appropriately conceded by the government, the district court did commit non-constitutional *Booker* error in arriving at Melgar's sentence by applying the Sentencing Guidelines in a mandatory fashion. *Gonzalez-Huerta*, 403 F.3d at 731-32. Mandatory application of the Guidelines is an error that is plain, thus satisfying the first two prongs of the plain-error test. *Id.* at 732.

Melgar cannot, however, satisfy the third prong of the plain error test. The third prong of the plain-error test focuses on whether the error at sentencing affected Melgar's substantial rights. For an error to have affected substantial rights, it "must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). The burden to establish prejudice is on Melgar, the party who failed to raise the issue below. *Gonzalez-Huerta*, 403 F.3d at 731. He can make the requisite showing by demonstrating a "reasonable probability" that the defects in his sentencing altered the result of the proceeding, i.e., that had the district court applied the post-*Booker* sentencing framework, he would have received a lesser sentence. *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). In cases of non-constitutional *Booker* error, like the case at hand, we apply this

standard particularly rigorously. *United States v. Dazey*, 403 F.3d 1147, 1175 & n.4 (10th Cir. 2005).

A review of the record in this case reveals nothing indicating a reasonable likelihood the district court would have imposed a lesser sentence if it had been operating under the post-*Booker*, discretionary sentencing regime. Melgar argues there were substantial questions raised at trial concerning the quantity and composition of the drugs found in his possession which reasonably could have affected the district court's sentencing decision under a post-*Booker* framework. It is certainly true that Melgar's counsel vigorously cross-examined the DEA chemist at trial as to his calculations regarding the quantity and quality of cocaine found in Melgar's vehicle. What Melgar fails to grasp, however, is that faced with this conflicting evidence, the jury nevertheless found beyond a reasonable doubt that Melgar possessed at least fifteen kilograms of cocaine. In light of the jury's specific finding on this question, and absent any indication on the part of the district court that it had any doubts about the jury's quantity determinations, this court fails to see how questions regarding the chemist's quantity and quality determinations demonstrate a reasonable probability that the district court would impose a lesser sentence if it were operating under a discretionary sentencing regime.

Nor does Melgar's status as a mid-process, female-to-male transsexual demonstrate a reasonable likelihood that the district court would impose a different sentence under a discretionary sentencing system. Other than the paragraph from the PSR quoted above, the record in this case is absolutely bare of any meaningful indications of exactly what unique hardships Melgar will face in prison. This court made clear in *Gonzalez-Huerta*, that it is the defendant's burden to demonstrate that his substantial rights were affected at the third-prong of the plain error test and that he must carry that burden solely with reference to the record on appeal. 403 F.3d at 733 & n.4. The brief paragraph in the PSR is simply not sufficient to carry Melgar's burden, particularly where there was no indication on the part of the district court that absent the mandatory nature of the Guidelines it would be inclined to pronounce a lesser sentence based on Melgar's transsexualism. This is especially true given the rigorous nature in which this court evaluates the third prong of the plain error test in cases of non-constitutional *Booker* error. *Dazey*, 403 F.3d at 1175 & n.4.

Because Melgar has not pointed to anything in the record on appeal demonstrating a reasonable likelihood the district court would impose a lesser sentence under the post-*Booker* sentencing scheme, he has not met his burden at the third prong of plain error review. Accordingly, the sentence imposed by the

United States District Court for the Northern District of Oklahoma is hereby

**AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge