**F I L E D**

PUBLISH

**February 22, 2007**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

    v.

RUIAN DU,

        Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

    v.

RACHEL CHAVEZ,

        Defendant-Appellant.

Nos. 05-1288 and 05-1371

No. 06-1053

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 04-CR-200-PSF and NO. 04-CR-340-WDM)**

John T. Carlson, Research and Writing Attorney (Warren R. Williamson, Assistant Federal Public Defender, with him on the briefs) Office of the Federal Public Defender, Denver, Colorado, for Appellants.

Peter H. Walsh, Assistant United States Attorney (Jerry N. Jones, Assistant United States Attorney, with him on the consolidated brief for Case Numbers 05-1288 and 05-1371, and on the brief for 06-1053) Office of the United States Attorney, Denver, Colorado, for Appellee.

Before **MURPHY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

This case requires us to consider the scope of our decision in *United States v. Souser*, 405 F.3d 1162 (10th Cir. 2005), as applied to a new employment verification policy for federal probationers established by the Colorado probation office. In *Souser*, we held that an earlier policy requiring probationers "to inform their employers of their criminal history unless they can convince their probation officer and the sentencing judge that employer notification is not necessary" was an occupational restriction under § 5F1.5 of the United States Sentencing Guidelines (USSG). *Id.* at 1167. Because the policy was an occupational restriction, the probation office could not enforce the policy without an individualized assessment of its need for each probationer. In response to our decision in *Souser*, Colorado adopted a new policy. The new policy—while not mandating notification—requires probation officers to verify the employment of persons on probation by contacting their employers.

Two probationers, Ruian Du and Rachel Chavez, independently challenge the employment verification policy, arguing that it violates *Souser* because it also imposes an occupational restriction on probationers under § 5F1.5. Their arguments were rejected by two different district courts, and defendants' timely appeals were consolidated in this case.

Having jurisdiction under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291, we find that an employment verification policy does not constitute an occupational restriction under the federal sentencing guidelines and therefore AFFIRM.

## I. Background

Ruian Du pleaded guilty to one count of destruction of mail by a United States Postal Service employee in violation of 18 U.S.C. § 1703(a). As a condition of his probation, the district court required him to obtain lawful employment. He complied by accepting a job as a school bus driver for the Douglas County School District.

Rachel Chavez pleaded guilty to one count of making false statements to the government in violation of 18 U.S.C. § 1001. As a condition of her probation, the district court required her to obtain lawful employment. She obtained employment as a driver for elderly and handicapped individuals.[1]

The probation office's employment verification policy applied to both defendants. They each sought a stay of the application of the policy in district court. Du argued that it constituted an occupational restriction in violation of *Souser*. The district court held otherwise, finding that the verification policy substantively differed from the notification policy at issue in *Souser* and therefore

---

[1] Originally, Chavez was subjected to the employer notification policy. She alleges this notification resulted in the loss of one job and several job offers. She did not notify her current employer of her conviction and in fact actively concealed it on her job application.

did not constitute an occupational restriction. A probation officer subsequently contacted the school district to verify Du's employment.

A different district court judge also rejected Chavez's challenge for slightly different reasons, finding that the policy is "entirely consistent" with USSG. § 5F1.5, and that it would be detrimental to the supervisory obligations of the probation office to preclude monitoring of probationers' employment status. R. Vol. II, at 35.

## II. Discussion

Federal statutes and the sentencing guidelines allow district courts to establish reasonable conditions as a part of probation or supervised release. For instance, 18 U.S.C. § 3563 provides a litany of mandatory and discretionary conditions, including: (1) meeting family support and restitution obligations, § 3563(b)(1)–(2); (2) finding suitable employment and performing it conscientiously, § 3563(b)(4); (3) refraining from visiting undesirable places or people, § 3563(b)(6); (4) agreeing to visits by probation officers at any time or place, § 3563(14); and (5) most relevant to these appeals, adhering to "occupational restrictions" by refraining from certain types of employment, § 3563(b)(5).

Federal probation officers, in turn, monitor a probationer's compliance with the terms and conditions of probation under the authority granted in 18 U.S.C. § 3603. That statute requires probation officers, among other things, to (1) keep

-4-

abreast of a probationer's living and working conditions, (2) keep a record of a probationer's work, and (3) report periodically to the sentencing court the probationer's compliance with the conditions of release. § 3603(2)–(3), (5), (7).

These various statutory requirements are implemented at sentencing through a variety of provisions in the Guidelines. Chapter 5B, for example, covers probation conditions generally, and includes a provision that can mandate disclosure of a probationer's criminal record to third parties. § 5B1.3(c)(13). Chapter 5F covers sentencing options and requires specific findings before imposing any employment conditions that are considered "occupational restrictions" under § 3563(b)(5).

## A. Conditions on Employment

Occupational restrictions under § 3563(b)(5) can restrict a probationer's employment in two ways: a court may require that a probationer (1) "refrain . . . from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense," or (2) "engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances."

According to the Guidelines, an occupational restriction is permissible in the following circumstances:

> The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation,

business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

§ 5F1.5.

An occupational restriction can thereby serve two purposes. First, it can first prevent a probationer from taking a certain type of employment. For example, a sex offender may not be allowed to work around children. Second, a lesser restriction can limit the "terms" of a probationer's employment. For example, a defendant convicted of fraud may be restricted from working in a position handling money at a bank or may be required to discuss with the employer bank the details of his criminal history.

The question presented in *Souser* required us to look at the second type of restriction, limits on the terms of a defendant's employment.

**B. Souser**

In *Souser*, we reviewed an employer notification policy that Colorado's probation office had informally adopted in its internal operations manual. The policy in place at the time required probationers, *prior to and as a condition of*

*accepting employment*, to notify potential employers of their conviction, supervision status, and any prior criminal history relevant to their employment situation. The policy allowed probationers to be excused from this duty only if they were able to demonstrate hardship arising from notification. The probation office justified the informal policy as necessary to provide third parties with notice of an employee's criminal history and any risks associated with that history.

The defendant argued that the employer notification policy acted as an occupational restriction. We agreed, concluding:

> [p]ursuant to the plain language of § 5F1.5, an "occupational restriction" is a condition of probation that either "prohibit[s] the defendant from engaging in a specified occupation, business, or profession, or limit[s] the terms on which the defendant may do so." Because an employer notification requirement *limits the terms* on which a defendant may engage in the specified occupation, it must be treated as an occupational restriction.

*Id*. at 1165 (internal citation omitted and emphasis added).

We found that requiring probationers to affirmatively disclose their criminal record prior to accepting employment "limits the terms" on which a probationer may seek employment. In other words, it placed an obligation on the probationers to accept employment only on condition of mandated disclosure of specific and detailed information about their criminal history. Since the notification policy implicated the literal terms of § 5F1.5, we required

individualized findings on a case-by-case basis before the condition could be imposed.[2]

## C. Employment Verification Policy

In response to our decision in *Souser*, Colorado changed its employment notification policy in May 2005. The probation office adopted what it called an "employment verification policy." The new policy was subsequently approved by Colorado's federal district judges.

Under the new policy, probation officers no longer require probationers to affirmatively contact employers and disclose their criminal status as a condition of and prior to employment. Probation officers are instead directed to "personally verify the employment of persons on probation or supervised release." Appellee Answer Br. Attach. 1 at 1. The policy was intended to correct the flaws in the notification policy identified in *Souser*. According to the policy statement,

> The significant difference between this new policy and the previous policy is that the defendant is not **required** to notify the employer about their supervision status. Rather, the officer, consistent with statutory duties outlined in 18 U.S.C. § 3603, is required to verify employment information

---

[2] At least one circuit has concluded that notification policies are not occupational restrictions. *United States v. Ritter*, 118 F.3d 502, 504 n.2 (6th Cir. 1997). Other circuits, however, have concluded that notification policies may constitute an occupational restriction. *See, e.g., United States v. Britt*, 332 F.3d 1229, 1232 (9th Cir. 2003) (finding that "it is clear that when a defendant is required to notify his clients of his criminal history, he is being subjected to an occupational restriction that must meet the requirements of § 5F1.5"); *United States v. Peterson*, 248 F.3d 79, 85–86 (2d Cir. 2001) (treating condition that required defendant to report conviction to his employer as an occupational restriction); *United States v. Doe*, 79 F.3d 1309, 1322 (2d Cir. 1996) (same).

about duties, responsibilities, compensation, and other employment information relevant to supervision.

*Id.* at 1 (emphasis in original).

As further support for the new policy, the following explanations were included to distinguish it from the prior notification policy:

(1) Verification is consistent with the duties of probation officers as outlined in 18 U.S.C. § 3603(2);

(2) Personal verification of employment by officers ensures that the defendant is actually employed in the capacity he/she reports and allows the officer to confirm whether any third-party risks exist that may require employment restrictions;

(3) Personal contact with employers to verify employment enables officers to build relationships with employers which support the officer's ability to assess an offender's progress under supervision;

(4) Personal verification of an employment situation enhances the officer's ability to make informed decisions and recommendations to the court regarding employment related travel, funds available for restitution, and potential third-party risk issues; and

(5) Establishing open contact with employers avoids the awkward situation of officers trying to conceal their true identities . . . when trying to contact an offender at a job site.

*Id.* at 1–2.

According to probation officers who testified about its scope and application in the stay proceedings below, the new policy is important for several reasons related to their supervisory responsibilities. First, it allows officers to confirm that probationers on home detention are attending their jobs or working full-time. Second, it allows officers to confirm that probationers are

conscientious and hard-working in their employment. Third, officers can investigate the duties and responsibilities of employment to determine whether more restrictive conditions are necessary. In applying the policy, probation officers do not volunteer information to the employer about the probationer's offense or criminal history. They will, however, disclose public information about the probationer if asked.

A policy allowing self-reporting of work status by the probationer was deemed inadequate given the number of probationers that must be monitored and the ease of fabricating or misreporting work history and performance. According to the testimony below, employers routinely have been contacted for many years as a part of probation services, and few probationers have lost their jobs as a result. The witnesses estimated that fewer than one percent of probationers have lost jobs as a result of employer contacts and that probationers maintain a high 95% employment rate as a rule.

In sum, the new verification policy differs in significant ways from the prior notification policy: (1) it does not require the probation officer to inform the employer of the employee's criminal history; (2) it places no burden on the probationer to inform an employer about a conviction; and (3) it does not require any duties of either the probation office or the probationer before the probationer accepts employment.

**D. Application of Souser**

The issue is whether this new verification policy constitutes an occupational restriction like the one we reviewed in *Souser*. We conclude that it does not.

The distinctions between the two policies make a difference in two important respects. First, the burdens on probationers are entirely different. Under the prior notification policy, the probationer had a pre-employment obligation to inform potential employers about his or her criminal history. In this sense, employer notification conditions the probationer's employment—before beginning *any* job, a probationer had to affirmatively notify a potential employer of his criminal history, including details of "risks that may be occasioned by the defendant's criminal record or personal history or characteristics." *Souser*, 405 F.3d at 1163–64. And if the probationer failed to give the requisite notice, the policy required the probation officer to notify the employer. Thus, under this policy a probationer could not accept any work without the requisite disclosures, and the disclosures might include information far afield from the offense of conviction.[3]

---

[3] The employer notification policy entailed active disclosure of not only the probationer's public record of conviction, but also any other personal information that the probation officer could arguably construe as placing the employer at risk. Under the new employment verification policy, in contrast, the probation officer contacts the employer only after the probationer has obtained employment and only for the purpose of job verification. The probation officer is
(continued...)

In contrast, the verification policy does not require the probationer to do anything as a condition of employment. Instead, it requires probation officers to verify a probationer's employment status, with no affirmative obligation on the probationer. Nor is a probationer penalized if a probation officer fails to verify his employment. The policy places no obligation on the probation officer to provide information about a probationer's crime or criminal history. In fact, the probationer can continue his employment regardless of whether a probation officer enforces the verification policy. The new policy, in short, does not limit the terms of employment under the plain meaning of § 5F1.5.

Second, the goals underlying the notification and verification policies are entirely different. The notification policy at issue in *Souser* mandated disclosure of a probationer's criminal history to an employer. The apparent goal of the policy was to reduce employers' and third parties' risks by ensuring that the employer knew of a potential employee's criminal background prior to hiring the employee.

---

[3](...continued)
discreet: he does not necessarily inform the employer that he is a probation officer and will disclose the probationer's public record of conviction only if asked. Of course, probationers may choose to notify the employer of their criminal status before such verification occurs. But they are not required to do so. In sum, it is simply irrelevant under the verification policy whether the employer knows of the probationer's criminal history, as the probationer's employment is not conditioned on notification.

The goal of the verification policy is broader and is not focused on the employer's knowledge. The verification policy instead implements the probation officer's statutory duty to monitor a probationer's progress toward rehabilitation. *See* 18 U.S.C. § 3603(2) (requiring a probation officer to "keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer . . . and report his conduct and condition to the sentencing court"); *id.* § 3603(3) (requiring a probation officer to "use all suitable methods . . . to aid a probationer. . . and to bring about improvements in his conduct and condition"); *id.* § 3603(4) (requiring a probation officer to "be responsible for the supervision of any probationer"); *id.* 3603(5) (requiring a probation officer to "keep a record of [the probationer's] work"). The rehabilitative goals of probation depend on reliable information about the probationer's life and conduct that may only be obtained by personal contact with a probationer's employer.[4] Thus, the verification policy furthers important

_____

[4] Du and Chavez argue that the probation officers can comply with these mandates in a less intrusive manner, such as obtaining a probationer's pay stubs. While perhaps the verification policy could be modified in many ways, the Guidelines do not require courts to supervise the details of a policy that does not impose an occupational restriction. Suffice it to say, the record suggests that a pay stub or other methods of verification would be insufficient to inform the officer if a probationer consistently arrives to work on time, is considered a good employee, associates with other felons, or appears engaged in his work—the very type of information which allows a probation officer to assess a probationer's progress. Nor does a pay stub allow an officer to build a relationship with an employer, thereby enabling the officer to promote the probationer's best interests. Nevertheless, the courts are neither equipped for nor in the business of making
(continued...)

statutory obligations, and, as we have noted, it does not conflict with the plain meaning of § 5F1.5.

We also note that *Souser* focused on required disclosures and did not bar all contact between an employer and a probation officer. Of course, the verification policy may inevitably result in some employers finding out about an employee's criminal history. But nonetheless we cannot construe every policy that has the potential for notification as an occupational restriction. As a matter of fact, many job applicants are already routinely asked about their criminal status when applying for jobs, so at worst a verification policy discloses nothing more than what the employer already knows about an employee. Moreover, reading § 5F1.5 so broadly as to apply to any contacts between probation officers and employers that might result in disclosure of information about an individual's criminal history could unduly restrict the use of other common and essential conditions of probation. For example, probation often includes garnishment of wages for restitution or workplace visits by a probation officer, both of which could notify an employer of a probationer's status. Taken to its extreme, *any* contact with an employer might lead to "notification" of a probationer's criminal history. Section 5F1.5 does not extend so far. And in any event, we presume and expect that

---

[4](...continued)
the daily, factually-intensive decisions of the probation officer, and we decline to micro-manage the probation office's application of policies that do not limit the terms of employment.

-14-

under the verification policy, a probation officer will exercise reasonable discretion in determining whether personal contact with an employer is necessary in a particular case to carry out his statutory duties.

Du and Chavez argue that the differences in policies are trivial. They argue the problem with the employment notification policy is not that employment is conditioned on notification, but that notification occurs at all, and this objection applies equally to the verification policy. They claim adverse consequences are likely to flow from verification, including termination, increased monitoring by the employer, or disclosure of a probationer's criminal status to their peers.

But the notification policy in *Souser* was not an occupational restriction merely because of possible adverse consequences. It was an occupational restriction because notification was required *as a condition* of employment. The verification policy, however, places no preconditional terms of employment on the probationer. A probationer may accept any form of employment, engage in any task required by this employment, and need not disclose anything to his employer as a result of the verification policy. Nor does the policy require employers to be told information about a probationer's criminal history. It only requires that the probation officer confirm the fact of employment, not disclose the details of the probationer's offenses.

Finally, we note the record developed before the district court suggests that adverse consequences of notification and verification are exaggerated. Only a

small percentage of probationers actually lost work as a result of employer contacts that probation officers routinely made prior to adoption of the verification policy. We also note that probationers who object to employment verification are entitled to seek exclusion from the policy on a case-by-case basis.

In sum, the employment verification policy does not place any "limit[s] on the terms" of employment, § 5F1.5, or require a probationer to "engage in [] a specified occupation, business, or profession only to a stated degree or under stated circumstances." 18 U.S.C. § 3563(b)(5). Accordingly, it is not an occupational restriction requiring individualized or case-by-case implementation.

## III. Conclusion

For the reasons discussed above, we AFFIRM.