**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN HENRY FIVAZ, a/k/a James
Hardway,

Defendant - Appellant.

No. 12-8016
D.C. No. 1:11-CR-00180-ABJ-1
(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, and upon motion of the

parties to this appeal, this panel granted the Motion to Vacate Oral Argument and

ordered this matter submitted on the briefs.  *See* Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G).

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. Introduction

Following his conviction for one count of mail fraud, in violation of 18 U.S.C. § 1341, defendant-appellant John Henry Fivaz was sentenced to twenty-four months' imprisonment to be followed by three years' supervised release. In this appeal, Fivaz challenges several conditions the district court imposed on his term of supervised release. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms** Fivaz's sentence.

## II. Background

Fivaz was charged by indictment with seven counts of mail fraud. He pleaded guilty to count 7 of the indictment, in exchange for the government's agreement to dismiss counts 1 through 6. The indictment related to a fraudulent scheme in which Fivaz convinced individuals to invest their money with him in exchange for promises of large returns. Fivaz cultivated most of the investors through his employment at Lowe's Hardware in Cheyenne, Wyoming. He referred to the investments as "loans" in an attempt to avoid securities laws implications. He diverted the money received from investors for personal use.

Count 7 of the indictment related specifically to Fivaz's dealings with M.P. M.P. met Fivaz in 2002 at the Sierra Trading Post, where they were both employed. She told Fivaz about being the victim of a previous investment scam. At Fivaz's request, she liquidated her Etrade account in the amount of $10,000 to invest with him. Fivaz told M.P. her monies were being invested in offshore

banks. M.P. also had an annuity account with Aviva Life and Annuity Insurance ("Aviva") with a cash value of at least $15,000. Fivaz contacted Aviva at least fourteen separate times in early 2010 in an attempt to liquidate the account. Initially, Fivaz posed as M.P.'s "family financial advisor." In later calls, Fivaz posed as M.P. herself.[1] Fivaz eventually convinced Aviva to send him a $15,000 check by overnight mail. Aviva had the check made out to M.P.; Fivaz's attempts to change the name of the person to whom it was issued were unsuccessful. Eventually, Fivaz deposited the $15,000 check in M.P.'s bank account in Cheyenne. He then contacted her, told her he had deposited $15,000 into her account for convenience[2], and needed to withdraw the money to "pay people." He convinced M.P. to write five separate checks to him totaling $14,900, which he then cashed. Soon after, other investors with Fivaz received "interest" payments.

The Presentence Report (PSR) detailed Fivaz's other convictions for financial crimes dating back to 1974, including embezzlement, passing bad checks, fraud, and conspiracy to commit mail fraud. The PSR noted Fivaz considered himself a victim throughout a prior term of supervised release, and Fivaz's "lack of acceptance of any responsibility, combined with his past history, suggests a strong likelihood [Fivaz] will continue to victimize others." At his

---

[1]The spelling of M.P.'s name was such that Fivaz convinced Aviva officials M.P. was a male.

[2]M.P. did not know the funds had been obtained from her annuity account.

sentencing hearing, Fivaz advocated for a downward variance, citing his declining health. The district court took note of Fivaz's deteriorating health, but also noted his criminal history "demonstrated a willingness to take advantage of other people who are vulnerable or gullible." The court further observed: "There is no question, just listening to Mr. Fivaz, that he is a person who is highly intelligent. His vocabulary certainly shows that. Why he has persisted in this conduct is beyond the understanding of the Court or beyond its need to understand, frankly." The court imposed a sentence of twenty-four months' imprisonment to be followed by three years' supervised release. The court also imposed the following special conditions of supervised release:

> Employment shall be subject to prior approval by the probation officer, although I suspect he is a person who is disabled at this point. Should defendant become employed, he shall execute a voluntary wage assignment until his restitution is paid and his special assessments are paid.
>
> . . . .
>
> He shall participate in a cognitive behavioral treatment regimen until excused by the probation office or completion of the program.

The court ordered restitution in the amount of $92,585. Noting Fivaz already owed restitution in excess of $500,000 for a prior case, the court observed that "the chance of any substantial recovery is . . . very slim." The district court's written judgment was consistent with its oral sentence, and included some additional clarifying language as to the final condition:

The Defendant shall participate in a cognitive-behavioral treatment regimen that may include but is not limited to, Moral Reconation Therapy, Cognitive Thinking, Thinking for a Change, or Interactive Journaling. The Defendant shall actively participate in treatment until successfully discharged or until the U.S. Probation Officer [has] excused the Defendant from the treatment regimen.

Fivaz did not object to the imposition of the conditions of supervised release during the sentencing hearing, nor did he object to the district court's written sentencing order.

## III. Discussion

### A. Standard of Review

When a defendant fails to object to a special condition of supervised release at the time it is announced, this court reviews for plain error. *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011). Plain error is "(1) error, (2) that is plain, which (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted). Error is plain if it is obvious at the time of appeal. *Id.*; *see also Henderson v. United States,* 133 S. Ct. 1121, 1127 (2013). To satisfy the third prong of plain-error review, the appellant bears the burden to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Gonzales-Huerta*, 405 F.3d at 732–33 (quotation omitted). For non-constitutional errors, even if the third prong of plain error review is satisfied,

the appellant also bears the burden of establishing the error was both particularly egregious and that this court's failure to notice the error would result in a miscarriage of justice. *Id.* at 736.

B.    Prior Approval Condition

Fivaz first objects to the district court's imposition of a condition that he receive the approval of his probation officer before obtaining employment. Fivaz argues this requirement amounts to an occupational restriction imposed without making the findings required by U.S.S.G. § 5F1.5.[3] Assuming without deciding

_____

[3]U.S.S.G. § 5F1.5 provides:

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

(continued...)

Fivaz has identified an error that is plain which affects his substantial rights, Fivaz's attempt to demonstrate the district court's imposition of the prior approval condition is particularly egregious or that the failure to remedy the purported error would amount to a miscarriage of justice falls short. *See Gonzales-Huerta*, 403 F.3d at 735. He simply cites *United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005), for the proposition that "imposing a sentence not authorized by law seriously affects the fairness, integrity, and reputation of the proceedings." To the extent *Pruden* could be read to stand for the proposition that any sentencing error which affects substantial rights must be corrected, it is inconsistent with binding Tenth Circuit precedent. *See Gonzales-Huerta*, 403 F.3d at 736; *see also United States v. Olano*, 507 U.S. 725, 737 (1993) ("[A] plain error affecting substantial rights does not, without more, satisfy the . . . standard, for otherwise the discretion afforded by Rule 52(b) would be illusory.").

We note that at the time of sentencing Fivaz suffered from serious health problems, was unable to work, and was receiving Social Security disability benefits. When addressing the court prior to being sentenced, after detailing his medical problems at length, Fivaz himself asserted he was unable to work. Based on Fivaz's statements and information in the PSR, the district court specifically noted the low likelihood that Fivaz will be able to work upon his release when it

---

[3](...continued)
*See also* 18 U.S.C. § 3563(b)(5).

imposed the prior approval condition. Thus, the record indicates it is unlikely

Fivaz will ever be required to comply with the prior approval condition. Fivaz

argues on appeal that there may be light-work, low-stress jobs he can perform

upon his release and that his condition may improve due to the medical care he

receives while incarcerated. These assertions are entirely speculative and

inconsistent with the position he took during sentencing. We therefore conclude

any potential error the district court committed in imposing the prior approval

condition without first making any necessary findings does not affect the fairness,

integrity, or public reputation of judicial proceedings.

C.    Wage Assignment Condition

Fivaz also challenges the district court's requirement that, should he

become employed, he execute a wage assignment until his restitution and special

assessment are paid in full. Fivaz argues this condition operates as a de facto

employer notification of his prior felony, which will restrict his ability to work.

He therefore argues the district court was required to make findings under

U.S.S.G. § 5F1.5 before imposing the condition.[4]  In *United States v. Du*, 476

---

[4]Fivaz also obliquely suggests the wage garnishment condition is substantively unreasonable. Fivaz cites no authority and makes no substantial effort at developed argumentation to establish mandatory wage garnishment is substantively unreasonable in the case of a defendant with nearly $600,000 in outstanding restitution. We therefore decline to consider this issue. *United States v. De Vaughn*, 694 F.3d 1141, 1154–55 (10th Cir. 2012) (noting inadequately briefed arguments are deemed waived).

F.3d 1168, 1174–75 (10th Cir. 2007), this court rejected a challenge to a

probation office policy which required officers to verify the employment of

probationers by contacting their employers. We specifically rejected a broad

reading of § 5F1.5 which would cover such a condition:

> [W]e cannot construe every policy that has the potential for
> notification as an occupational restriction. As a matter of fact, many
> job applicants are already routinely asked about their criminal status
> when applying for jobs, so at worst a verification policy discloses
> nothing more than what the employer already knows about an
> employee. Moreover, reading § 5F1.5 so broadly as to apply to any
> contacts between probation officers and employers that might result
> in disclosure of information about an individual's criminal history
> could unduly restrict the use of other common and essential
> conditions of probation. For example, probation often includes
> garnishment of wages for restitution or workplace visits by a
> probation officer, both of which could notify an employer of a
> probationer's status. Taken to its extreme, *any* contact with an
> employer might lead to "notification" of a probationer's criminal
> history. Section 5F1.5 does not extend so far.

*Id.* at 1174–75. This court has thus rejected the basis for Fivaz's challenge to the

wage assignment condition of his supervised release, and the district court

therefore did not err in imposing it.[5]

> D.     Cognitive-Behavioral Treatment Condition

Fivaz lastly challenges the district court's imposition, as a special condition

of supervised release, of a requirement that he participate in a cognitive

---

[5]It is of no consequence that *Du* discussed a wage garnishment condition in the context of probation, rather than supervised release, because U.S.S.G. § 5F1.5 does not distinguish between probation and supervised release.

behavioral therapy (CBT) program until he completes the program or is excused by the probation office. Fivaz argues first that the district court abused its discretion by imposing the CBT condition without making sufficient findings that such treatment is necessary or related to either the crime or something in his history. *See Pruden*, 398 F.3d at 248–49. Even assuming Fivaz has identified an error that is plain, Fivaz makes no attempt to show that, had he objected, the district court could not have made the required findings justifying the CBT condition. To the contrary, Fivaz simply asserts: "Whatever nexus there may be between the mail fraud committed by Mr. Fivaz and the need for [CBT] was never explained by the district court." Appellant's Br. at 23-24. This argument overlooks the strong likelihood that it was Fivaz's own failure to object that contributed to the district court's purported deficient explanation for its imposition of the CBT condition. Fivaz has therefore failed to demonstrate a reasonable probability that, but for the error claimed, the outcome would have been different. *Gonzales-Huerta*, 403 F.3d at 732.

Fivaz also argues that the CBT condition, as structured by the district court, constitutes an impermissible delegation of Article III authority to a non-judicial officer. While this argument, too, is reviewed for plain error, we conduct our analysis "less rigidly when reviewing a potential constitutional error." *Mike*, 632 F.3d at 692 (quotation omitted). This court has previously held there is a distinction between supervised release conditions which affect a significant

liberty interest and those which do not. *Id.* at 695–96. Granting a probation officer the discretion to decide whether the former such conditions may be imposed is an impermissible delegation of Article III authority, while granting such authority as to the latter such conditions is not. *Id.* Conditions this court has recognized as affecting a significant liberty interest include requiring participation in residential treatment, penile plethysmographic testing, or the forced administration of psychotropic medication. *Id.* at 696, 699. This court has further held open-ended instructions which do not explicitly delegate the discretion to order conditions which affect a significant liberty interest will not be construed to do so. *Id.* at 696. Here, the district court mandated Fivaz participate in a CBT program. The only aspect of the condition even arguably left to the discretion of the probation officer is the choice of which program he participate in and whether to excuse Fivaz from the treatment regimen prior to his completion of the program. Fivaz does not make any attempt to argue he possesses a significant liberty interest in the choice of CBT programs. Moreover, even if the district court's order is construed to allow the probation officer complete discretion whether to order participation in CBT as a whole, Fivaz does not attempt to demonstrate such a requirement would touch on a significant liberty interest in a manner analogous to requiring residential treatment, penile plethysmographic testing, or forced administration of psychotropic medication. The district court therefore did not plainly err in imposing the CBT condition.

-11-

## IV.    Conclusion

For the foregoing reasons, the judgment of the district court is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge